UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                            Case Number 21-20634

v.                                                    Honorable David M. Lawson

DARRIOUS JERMAINE ARRINGTON,

        Defendant.

_____/

**<u>OPINION AND ORDER DENYING MOTION TO SUPPRESS EVIDENCE</u>**

Defendant Darrious Arrington is charged with unlawfully possessing two firearms as a convicted felon. The guns were discovered during the execution of a search warrant for his listed residence. Detroit police officers obtained the search warrant as part of their investigation of a string of burglaries of commercial stores, for which Arrington was a prime suspect. He moves to suppress the guns and statements he made during the investigation, arguing that the affidavit submitted in support of the search warrant did not establish probable cause and was based on stale information. The parties have waived oral argument and agreed to submit the motion on the papers. Because the evidence recounted in the affidavit was sufficiently current to support the magistrate's probable cause finding, the search of the residence and seizure of the guns were lawful, and the evidence need not be suppressed. The motion will be denied.

I.

There actually were two search warrants issued that relate to the seizure of the guns. The first authorized a search of a residence for evidence of the defendant's involvement in a spree of burglaries at Family Dollar Stores. During the execution of that warrant, police found two guns on the premises. The second search warrant authorized police to search the same premises for

evidence of the defendant's illegal possession of firearms based on the discovery of the guns in the home where the defendant was present and subsequently arrested.

Arrington argues that the first of two warrants that were procured by police was not founded on an adequate showing of probable cause to believe that evidence of the defendant's involvement in a string of burglaries would be found in the home that was searched, where the incriminating firearms were discovered. The following facts were set out in the affidavit in support of the warrant application.

On May 20, 2021, Detroit Police Officer Adam Langford was assigned to investigate a burglary of a Family Dollar Store in Detroit. The safe in the store was opened with a security code and more than $6,000 dollars was taken. Officers who responded to the call viewed a security video that showed persons using a sledgehammer to smash a glass door, entering the store, and retrieving money from the safe after entering the security code.

While the investigation was in progress, between May 20, 2021 and June 3, 2021, four other Detroit area Family Dollar Stores were burglarized, and money was taken from three of the four store safes using the same means of opening them with a security code. On May 24, 2021, suspects smashed the door of another store, but they failed to open the safe because the security code had been changed. On June 1, 2021, suspects smashed a front window and entered a different store, and again they failed to open the safe. Security videos showed the suspects entering the store and trying unsuccessfully to open the safe. On June 3, 2021, officers responded to another burglary call. Upon arrival, they found that the front window of the store had been smashed with a "window punch tool" that was discarded near the storefront, and the reporting witness stated that more than $9,000 was taken from the store safe.

On July 6, 2021, officers of the Highland Park Police Department responded to a report of a fifth burglary at another Family Dollar Store. The police tracked a GPS device that was concealed in money that was taken from the safe. The GPS tracker led them to a location where they found defendant Darrious Arrington and Glenn Douglas. They were arrested.

On July 7, 2021, Officer Langford interrogated Arrington and Douglas, both of whom denied any involvement in the Detroit burglaries. However, Arrington admitted that he burglarized the Highland Park store the previous day. He also admitted that his brother, Kenneth Wilson, was a Family Dollar Store manager, but he said that Wilson was not involved in the burglary. Langford also spoke to Michael Robinson, a Family Dollar Store Regional Asset Protection Manager, who told him that only a few employees had access to safe codes, including Wilson.

Langford attested that when he viewed security video from one of the robberies, he saw that one of the suspects was wearing exposed camouflage pattern underwear, and Arrington was wearing the same style of underwear when he was arrested on July 6, 2021. Langford further observed that the height, weight, and complexion of the two suspects visible on the video matched the appearances of Arrington and his brother. In particular, one of the suspects had long hair that was visible around the opening of a hood he was wearing, and Kenneth Wilson was observed in recent photos having a similar style of long hair. During further investigation, Langford procured cell phone records under a separate warrant, which disclosed that Arrington and Wilson had communicated by cell phone during the time of one of the burglaries, and their phones had connected with cell towers near a store that was burglarized.

Officer Langford continued his investigation and found in Michigan Department of Corrections (MDOC) records that the defendant had provided an address of 1525 Roselawn Street in Detroit as his place of residence. Langford discovered from other MDOC reports that the

defendant's girlfriend of three years lived at the home and was five months pregnant. He also found cell phone records showing that the defendant's cell phone connected to cell towers in the vicinity of the residence more often than other cell towers in the area.

On September 22, 2021, a warrant was issued for the defendant's arrest based on his involvement in the Highland Park burglary on July 6, 2021. On September 27, 2021, the defendant was observed leaving the 1525 Roselawn residence.

On September 29, 2021, Langford procured a warrant to search 1525 Roselawn based on the above stated facts. The warrant authorized police to search the home for any evidence of the defendant's involvement in the string of burglaries, including "[a]ll records, telephone/address books and documents," "[a]ll clothing, gloves, shoes, tools, phones, computers, electronics," "all receipts, records or documents," "[a]ny security surveillance equipment," and "all indicia of a crime germane to conduct of a proper burglary investigation." Police entered the home and found the defendant there. While conducting their search, they found one gun in a cabinet in a back bedroom, and another under a couch in the living room. The defendant admitted to police that he slept on the couch in the living room.

Arrington was arrested and taken to the police station where he was interrogated and made further statements admitting his involvement in the July 6, 2021 burglary and admitting that he had bought one of the seized firearms illegally. He contends that the other gun was found in his girlfriend's bedroom and belonged to her.

II.

Arrington asks the Court to suppress evidence of the guns and "his statements made during interrogation." However, he does not articulate any legal argument or factual basis for suppression of any statements made to police. He concedes that there was probable cause to arrest him for

burglary and he does not suggest that the interrogation was in any way unlawful. Instead, he appears to rely on a tainted tree argument. He also does not challenge the second warrant that authorized seizure of the guns after they were spotted by police. Again, he appears to proceed on the theory that since the first warrant was defective, any evidence obtained cannot be used to establish probable cause for the second warrant.

It is well settled that the Fourth Amendment prohibits "unreasonable searches and seizures," and that in most instances, a search is unreasonable "if it is not conducted pursuant to a warrant issued upon probable cause." *Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 280 (6th Cir. 2018) (quoting U.S. Const. amend. IV; citing *Camara v. Municipal Court of City & County of San Francisco*, 387 U.S. 523, 528-29 (1967)).

"Probable cause exists if 'the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched.'" *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018) (quoting *Greene v. Reeves*, 80 F.3d 1101, 1106 (6th Cir. 1996)). "The Fourth Amendment does not require probable cause to believe evidence will conclusively establish a fact before permitting a search, but only probable cause to believe that the evidence sought will aid in a particular apprehension or conviction." *Ibid.* (quotations omitted). "When [the Court] review[s] a warrant application for indicia of probable cause, [it must] read the affidavit reasonably holistically, examining the totality of the circumstances and employing a healthy dose of common sense," and "consider both the facts outlined in the affidavit and the reasonable inferences permissibly drawn from those facts." *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018) (quotations omitted).

Focusing on the first search warrant, Arrington argues that (1) there was no probable cause to search the defendant's residence for any evidence of store burglaries, because the information available to police suggested only that he was involved in a July 6, 2021 burglary, and the police previously recovered the only apparent "evidence" of that crime — the cash taken from the store safe — when they arrested the defendant on that same date, (2) the police had some "suspicion" that the defendant was involved in other robberies, but their suspicion "did not amount to probable cause," (3) there was no "nexus" between the searched residence and the burglaries, because the defendant was "nomadic," residing sporadically at various locations, including the one where the search was conducted, (4) the information recited in the warrant was stale because the robberies were committed between two and four months before the search warrant was procured and executed, and (5) there was no reason to believe that readily fungible cash from burglaries committed months earlier would be retained in the subject premises by the defendant so long after the crimes.

The first warrant affidavit recited ample probable cause to search the home for evidence of the defendant's participation in a spree of Detroit-area burglaries over the course of several months. In arguing otherwise, the defendant urges the Court to focus narrowly on the cash burglary proceeds as the only conceivable justification for searching his residence. There is no justification, however, for such a cramped view of the legitimate investigation.

The defendant also relies on that defective premise to support his staleness argument. Of course, "stale information cannot be used in a probable cause determination." *United States v. Frechette*, 583 F.3d 374, 377-78 (6th Cir. 2009). However, "[t]he staleness inquiry depends on the 'inherent nature of the crime.'" *Ibid.* (quoting *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998)). "In analyzing whether information is stale, [the] court considers the following factors:

(1) the character of the crime (chance encounter in the night or regenerating conspiracy?), (2) the criminal (nomadic or entrenched?), (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?), and (4) the place to be searched (mere criminal forum of convenience or secure operational base?)." *Id.* at 378 (quoting *United States v. Abboud*, 438 F.3d 554, 572-73 (6th Cir. 2006)). The information recited in the affidavit was not unreasonably stale because the investigation suggested the defendant's involvement in an ongoing course of criminal conduct, and it was reasonable to believe that instrumentalities of the crimes such as durable tools and clothing, along with documents and electronic records reflecting information used in the crimes, may have been retained by the defendant at his place of residence.

First, there was sufficient information for a reasonable person to conclude that the defendant was involved in all of the Detroit-area burglaries. The method of each burglary was similar, with suspects breaking or smashing a front door or window to enter, and then opening or attempting to open the store safe using a security code. All of the burglaries were of stores in the same Family Dollar Store chain, in the same geographic locality. Investigators learned that few Family Dollar Store employees knew the store safe codes, one of whom was the defendant's brother, Kenneth Wilson. Persons resembling the defendant and Wilson were captured on security video during one of the incidents. The defendant's and his brother's cell phones also communicated around the time of one burglary, and both phones connected to towers in the vicinity of the store where a break-in occurred. Finally, when a GPS tracker led police to the defendant, he admitted that he was involved in the July 6, 2021 burglary of a Family Dollar Store. That evidence taken as a whole readily supports the conclusion that the defendant was a prime suspect in a string of burglaries of five Family Dollar Stores from May through July 2021.

Second, there was good reason to suspect that other evidence might exist connecting the defendant to the burglaries. The burglars were observed in one security video using a sledgehammer to smash a glass door, and a punch tool was found at the scene near the smashed front window of another store. Suspects captured on surveillance videos were wearing readily identifiable clothing. The suspects also communicated during the burglaries using their cell phones. Based on the fact that safes were opened using security codes, it is reasonable for the magistrate to infer that documents or electronic devices associated with the defendant might contain records of the codes that were used. All of those instrumentalities of the crimes were durable and had ongoing utility in a months-long burglary spree, so there was good reason to suspect that the defendant would retain them for use in future crimes.

Third, there was a nexus between the defendant and the subject premises sufficient to suggest that he resided there and that he therefore might keep evidence of his crimes close at hand in the home. The defendant provided the 1525 Roselawn address to MDOC authorities as his residence. His girlfriend of several years lived in the home. His cell phone frequently connected to cell towers in the vicinity of the home. And he was seen leaving the home two days before the search warrant was procured. Although the defendant contends otherwise in his brief, there is no information in the record suggesting that he was "nomadic" or resided elsewhere more regularly than he did at the Roselawn address. The information that is found in the affidavit, though, is sufficient for a reasonable person to infer that he lived in the home.

The defendant argues that the information in the warrant affidavit was stale, but the relevant factors all suggest otherwise. First, the string of burglaries over the course of several months was an ongoing enterprise, not a chance encounter, and "[t]he passage of time becomes less significant when the crime at issue is ongoing or continuous and the place to be searched is a secure

operational base for the crime." *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006). Spans of time lasting one to several months between the events recited in the affidavit and the issuance of a search warrant have been found tolerable — and the facts sufficiently fresh — where, as here, the affidavit recited enough information suggesting that the criminal scheme under investigation was continuous over a lengthy span. *E.g.*, *United States v. Peterson*, 840 F. App'x 844, 849 (6th Cir. 2021) ("Two witnesses told officers that Peterson was actively involved in trafficking heroin in the days and weeks before the warrant issued. Peterson too had identified Westbrook as his residence less than two months before officers searched the apartment. And officers witnessed short-term traffic from Westbrook consistent with drug trafficking just prior to securing the warrant."); *United States v. Tisdale*, 980 F.3d 1089, 1094 (6th Cir. 2020) ("Even if a month had passed, that's not enough time for information to go stale given the ongoing nature of the conspiracy and the ample evidence of drug trafficking connected to the address."); *see also United States v. Williams*, 787 F. App'x 875, 878 (6th Cir. 2019) (holding that information discovered eleven months before the search warrant issued for child pornography was not stale).

This case also is unlike those in which information was found to be stale because the warrant affiant recited only a single isolated past transaction at an unknown time, with no corroborating investigation indicating any ongoing criminal scheme. *E.g.*, *United States v. Hython*, 443 F.3d 480, 486 (6th Cir. 2006) (invalidating a search warrant for drugs in a home based on a "single transaction is not supported by any further police investigation" where the affidavit offered "no clue as to when this single controlled buy took place"); *United States v. Christian*, 893 F.3d 846, 859-60 (6th Cir.2018) (finding inadequate a search warrant affidavit that "reflect[ed] only a single purchase from a reliable informant eight months before the search and no other

credible evidence of drug activity beyond four prior drug convictions ranging from 4 to 19 years old").

Second, there is no information suggesting that the defendant was "nomadic." In fact, he admitted that he slept on the couch in the living room, which bolsters the attestations suggesting that he was living at the home. There is more evidence of his residence there such as MDOC records showing that he had identified the address as his residence, and the sighting of him leaving the home two days before the warrant was procured. From this, it also readily could be inferred that the defendant would employ his residence as a base of operations during a several-months burglary spree, and that evidence of his crimes could be found there.

Third, the items sought such as tools and documents also were durable items with potential ongoing utility in the burglary scheme. The defendant asserts that the "only evidence" of the July 6, 2021 burglary was cash that already had been recovered by police upon his prior arrest. But the affiant's narrative credibly suggests that much more evidence might exist such as tools that were known to have been used in the break-ins, along with communication devices and records of communications among the suspects, including records of safe codes that were known to have been used to open several of the safes.

All these circumstances, and the fact that the spree of burglaries was carried out over the course of several months, establish that the delay of two months between the defendant's initial arrest and procurement of the search warrant did not render the information stale.

## III.

There was probable cause to issue both search warrants. There is no basis to suppress the evidence recovered or the defendant's statements.

- 11 -

Accordingly, it is **ORDERED** that the defendant's motion to suppress evidence (ECF No. 16) is **DENIED**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated:   January 18, 2022